## (December 16, 1982)

■ FIRST NATIONAL STATE BANK OF NEW JERSEY, Respondent, v IRVING TRUST COMPANY, Appellant, et al., Defendants. — Judgment, Supreme Court, New York County (Patlow, J.), entered upon a jury verdict against defendant-appellant, November 23, 1981, unanimously reversed to the extent appealed from, on the law, and the complaint dismissed, with costs. The remainder of the verdict, in favor of two other defendants, is not before us. Between 1973 and 1975, R. L. Dreifuss, Inc. (variously herein Dreifuss, Inc, Dreifuss Corporation, or the Corporation), and its president, Robert L. Dreifuss, obtained several loans from different banks, including defendant-appellant Irving Trust Company, and defendants Chase Manhattan Bank and Barclays Bank of New York. Irving's relationship with Dreifuss, Inc., commenced in October, 1973 with a $200,000 demand loan from Irving to Dreifuss, Inc., personally guaranteed by Mr. Dreifuss. In July, 1974, this loan was increased to $325,000. On August 28, 1974, Mr. Dreifuss approached Irving's vice-president, Figueroa, and requested a *personal* loan of $325,000 due September 3, 1974, for the purpose of "cleaning up" the Corporation's loan due Irving. Mr. Dreifuss explained to Figueroa that the Corporation's fiscal year would end August 31, 1974, and that this transaction would improve the appearance of the corporate year-end financial statement. The result of this maneuver was to wipe out the corporate debt of $325,000 as of August 29, 1974, by payment of the proceeds of the $325,000 loan made to Mr. Dreifuss. The original indebtedness was reinstated on September 3, 1974, when Irving loaned $325,000 to Dreifuss, Inc., which used the proceeds to pay off the August 29, 1974 personal loan to Mr. Dreifuss. This "weekend loan" transaction achieved the result which Dreifuss sought: The Corporation's fiscal year-end statement would not reflect the $325,000 corporate indebtedness. Unbeknownst to Irving, Dreifuss, Inc., obtained similar "weekend" discharges of other loans pursuant to similar transactions with defendants Chase Manhattan and Barclays Bank. In January, 1975, Mr. Dreifuss approached plaintiff bank to discuss the possibility of a loan to Dreifuss, Inc., in the $400,000 range. Accompanying this request, Dreifuss, Inc., transmitted to plaintiff documents purporting to be its unaudited balance sheet as of August 31, 1974 and the unaudited statement of income, profit and loss for the fiscal year ending August 31, 1974. The submitted documents were not the actual unaudited financial statements prepared by the Corporation's certified public accountants, Golub & Klein; Mr. Dreifuss prepared his own financial statements for the Corporation, which he represented to be statements prepared by the accountants. Although the balance sheet as of August 31, 1974 did not reflect the corporate loans of Chase

and Barclays, it included a $325,000 liability described as "Notes payable to Bank." Thus, the Dreifuss-Irving relationship was not entirely concealed; indeed, Mr. Dreifuss did specifically advise plaintiff that Dreifuss, Inc., had a $325,000 outstanding loan from Irving and that the purpose of the loan requested of plaintiff was to permit Dreifuss, Inc., to repay the Irving obligation. During the negotiation between plaintiff and Mr. Dreifuss, plaintiff communicated with Irving, which acknowledged the existence of the $325,000 corporate indebtedness; the latter had by then been reinstated by means of the transaction involving the personal loan afforded Mr. Dreifuss. Indeed, he told Irving that the $325,000 debt shown in the "corporate statement" represented the Irving loan, which he "had not bothered to take off the books." Plaintiff, while processing Mr. Dreifuss' loan application, made no effort to verify the accuracy of information furnished by Mr. Dreifuss; to the contrary, there was no contact with accountants Golub & Klein; there was no request for audited statements; there was no request for financial information for any period post August 31, 1974; and there was complete reliance upon the financial portrayal supplied by the prospective debtor. On February 13, 1975, plaintiff granted a loan of $425,000 to Dreifuss, Inc. Plaintiff ultimately commenced the instant action against Irving, Chase Manhattan and Barclays Bank. A first cause of action alleged that Irving had acted fraudulently or that its conduct was so grossly negligent and made with such reckless disregard of the consequences as to constitute a fraud. In essence, it was urged that Irving's representations as to the financial status of Mr. Dreifuss and the Corporation had induced the loan from plaintiff. The third and fifth causes asserted fraud on the part of Chase Manhattan in inducing the $425,000 loan from plaintiff, and the seventh cause similarly asserted fraud on the part of Barclays Bank. The jury sustained neither. Prior to submitting the case to the jury, the court dismissed the negligence and punitive damages causes of action. The jury returned a verdict against Irving, but in favor of Chase and Barclays. As a matter of law, plaintiff's case of fraud was insufficient. There was no evidence that Irving extended the weekend loan with the intention of deceiving future creditors of Mr. Dreifuss or the Corporation in order to induce the granting of other loans, the proceeds of which would be used to repay the Irving loan. At most, an inference arises that the weekend loan by Irving, apparently issued as an accommodation to its customer who, the bank hoped, would remain a useful client, constituted a misrepresentation in that it could create a false impression as to Dreifuss, Inc.'s financial status as reflected in the Corporation's year-end statement. But this alone would not establish fraud, for the plaintiff bank failed to establish two additional key elements: reasonable or justifiable reliance upon the financial statement as it related to the Dreifuss-Irving relationship, and that, were it not for the Irving weekend loan, and its consequential effect on the Dreifuss, Inc., financial statement, plaintiff bank would not have extended credit to Dreifuss, Inc. In any event, the evidence established that, from the very outset of the negotiations with Dreifuss and the Corporation, plaintiff bank was fully aware of the Irving loan; indeed, Mr. Dreifuss specifically informed plaintiff that he intended to use part of the proceeds of plaintiff's loan to repay the Irving obligation. "However limited may be the duty to probe the truthfulness of a representation (see Prosser on Torts [2d ed.], pp. 552-553; Restatement, Torts, § 540), there can be no liability in fraud where the complaining party is, in advance, fully knowledgable and apprised of those matters as to which the representations are alleged to have deceived." (*200 East End Ave. Corp. v General Elec. Co.,* 5 AD2d 415, 418, affd 6 NY2d 731.) The purpose of the weekend loan as far as Irving was concerned was to temporarily "clean up" the corporate debt to Irving and to improve the

appearance of the Corporation's year-end financial statement. However, no deception was perpetrated upon plaintiff since it was fully aware of the Irving loan, of which it had been informed both orally and by its apparent inclusion in the Dreifuss, Inc., financial statement under the category, "Notes payable to Bank." (See *Miller v Livingstone,* 25 AD2d 106, 108, affd 18 NY2d 967.) Irving had no knowledge of loans made by other banks, and its belief that the $325,000 amount representing "Notes payable to Bank" reflected the loan it had extended to Dreifuss, Inc., was reasonable. There was no proof that Irving knew of a Chase investigation which concluded that the $325,000 amount consisted of a $300,000 loan from Sterling National Bank and $25,000 in bills discounted from an unnamed bank; rather, the evidence confirmed that Irving was told by Mr. Dreifuss that the $325,000 amount represented the Irving loan which Dreifuss had not bothered to take off the books or report to his accountants. Irving cannot be held accountable for Mr. Dreifuss' actions, of which it had only partial knowledge. He was the one who transmitted to the plaintiff bank the documents purporting to be the financial statements of Dreifuss, Inc., which, as the record establishes, were forgeries by him of the unaudited financial statements prepared by Golub & Klein. "Under ordinary circumstances no one is chargeable with damages because he has not anticipated the commission of a crime by some third party." (*Saugerties Bank v Delaware & Hudson Co.,* 236 NY 425, 431.) Plaintiff-respondent not having made out a prima facie case against defendant-appellant, the complaint should have been dismissed. Were we not dismissing on the law, we would have reversed on the facts. Concur — Murphy, P. J., Kupferman, Markewich and Lynch, JJ.