■ ZACHARY D. RUFFING et al., Plaintiffs, and CANDACE CURTIS et al., Appellants, v UNION CARBIDE CORPORATION et al., Defendants, and INTERNATIONAL BUSINESS MACHINES CORPORATION, Respondent. [764 NYS2d 462] —In an action to recover damages for personal injuries, etc., the plaintiffs Candace Curtis and Heather Curtis appeal from (1) an order of the Supreme Court, Westchester County (DiBlasi, J.), entered August 3, 2001, which denied their motion for leave to amend the complaint to add various causes of action on their behalf based on fraud, and (2) an order of the same court entered December 6, 2001, which denied their motion, in effect, for leave to reargue.

Ordered that the appeal from the order entered December 6, 2001, is dismissed, as no appeal lies from an order denying a motion for leave to reargue; and it is further,

Ordered that the order entered August 3, 2001, is modified, on the law and as a matter of discretion, by deleting the provision thereof denying the *motion for leave to amend the* complaint in its entirety and substituting therefor a provision granting the motion for leave to amend the complaint solely to the extent of granting the infant plaintiff Candace Curtis leave to assert causes of action based on (1) fraudulent misrepresentation, (2) constructive fraud, (3) fraudulent concealment, and (4) negligent misrepresentation; as so modified, the order is affirmed; and it is further,

Ordered that one bill of costs is awarded to the appellants.

The appellants allege, inter alia, that the plaintiff Heather

Curtis (hereinafter Curtis) continued to work at a semiconductor manufacturing plant in East Fishkill in reliance upon the assurances made by her employer, the defendant International Business Machines Corporation (hereinafter IBM), to the effect that her working environment was harmless to the fetus that she was then carrying. The appellants further allege that IBM repeatedly gave such assurances even though it knew that its work environment did, in fact, pose a significant danger to the health of Curtis's fetus, and that, as a direct consequence of her detrimental reliance on IBM's wilfully deceptive statements, Curtis's child, the infant plaintiff, Candace Curtis (hereinafter the infant plaintiff), was born with extremely serious birth defects.

Based on these allegations, both Curtis and the infant plaintiff sought leave to amend the complaint to assert various causes of action based on fraud. The Supreme Court denied their motion. For the following reasons, we conclude that the motion should have been granted as to the infant plaintiff, but was properly denied as to Curtis.

As to the claims asserted by Curtis in her individual capacity, we agree with IBM, and with our colleagues in the partial dissent, that Curtis may not assert fraud causes of action based on the allegations noted above where to do so would permit circumvention of the statute of limitations applicable to her negligence cause of action. In *Cabrini Med. Ctr. v Desina* (64 NY2d 1059 [1985]), for example, the Court of Appeals held that the various theories of liability pleaded in one single cause of action (including theories based on fraud, negligence, and breach of contract) were all governed by the six-year statute of limitations applicable to causes of action based on breach of construction contracts (*Cabrini Med. Ctr. v Desina, supra* at 1061; *State of New York v Lundin,* 60 NY2d 987 [1983]). The Court of Appeals stated, "[e]ven if a separate cause of action had been stated, plaintiff could not by allegations of fraud that are incidental to its complaint for breach of contract extend the life of its claim" (*Cabrini Med. Ctr. v Desina, supra* at 1061-1062; *Queensbury Union Free School Dist. v Walter Corp.,* 101 AD2d 992, 993 [1984], *affd* 64 NY2d 964 [1985]; *New York Seven-Up Bottling Co. v Dow Chem. Co.,* 96 AD2d 1051, 1053 [1983], *affd* 61 NY2d 828 [1984]).

Similarly, in *New York Seven-Up Bottling Co. v Dow Chem. Co. (supra)*, the Court of Appeals concluded that the fraud cause of action asserted in the complaint was based on the very same facts as the products liability cause of action. The Court of Appeals stated, "[t]he six-year fraud Statute of Limi-

tations (CPLR 213, subd 8) is only applicable when there would be no injury but for the fraud" (*New York Seven-Up Bottling Co. v Dow Chem. Co., supra* at 1052-1053; *see also Clark-Fitzpatrick, Inc. v Long Is. R.R. Co.,* 70 NY2d 382, 390 [1987]; *Deerfield Communications Corp. v Chesebrough-Ponds,* 68 NY2d 954 [1986]; *Rattenni v Cerreta,* 285 AD2d 636 [2001]; *Appian Estates v Mastroddi,* 274 AD2d 366 [2000]; *Oeffler v Miles, Inc.,* 241 AD2d 822, 826 [1997]; *Doe v Roe,* 192 AD2d 1089 [1993]; *cf. Santiago v 1370 Broadway Assoc.,* 96 NY2d 765 [2001]; *Simcuski v Saeli,* 44 NY2d 442, 452 [1978]; *Schreiber v Cimato,* 299 AD2d 813 [2002]).

If the allegations of the complaint are true, the damages incurred by the appellants were the product of the negligence of IBM in permitting the pregnant plaintiff, Curtis, to be exposed to noxious chemicals. The fraud inherent in the insistence by IBM that its workplace was safe for pregnant women did not result in the infliction of any additional damages over and above the damages to which the appellants would be entitled were they to prevail on their negligence causes of action. In accordance with the rule stated above, Curtis, whose negligence cause of action is time-barred, may not seek compensation for these damages by asserting a cause of action based on fraud.

As to the infant plaintiff, however, we disagree with the position advanced by IBM on appeal, and adopted by our colleagues in the partial dissent. IBM argues, and our dissenting colleagues agree, that no fraud cause of action may be stated on behalf of the infant plaintiff, because it was not she, but her mother, who relied on the allegedly deceptive statements made by IBM.

The argument by IBM contravenes the rule that "[f]raud * * * may * * * exist where a false representation is made to a third party, resulting in injury to the plaintiff (*see, Eaton, Cole & Burnham Co. v Avery,* 83 NY 31 [1880]; *Rice v Manley,* 66 NY 82 [1876]; *Desser v Schatz,* 182 AD2d 478 [1992]; *Cooper v Weissblatt,* 154 Misc 522 [1935]; 60 NY Jur 2d, Fraud and Deceit, § 117)" (*Buxton Mfg. Co. v Valiant Moving & Stor.,* 239 AD2d 452, 454 [1997]). IBM has not successfully demonstrated why this rule should not be applied to the facts of this case, or why this Court should, in effect, create an exception to this rule. Our colleagues in the partial dissent likewise fail to articulate any basis for their apparent unwillingness to apply this rule of law, which is relatively well settled, and which is reflected in several prior cases of the Court of Appeals, to the facts of the case under review.

In *Rice v Manley* (66 NY 82 [1876]), for example, the plaintiff Rice contracted to purchase a quantity of cheese, and the defendant Manley, knowing of Rice's contract, fraudulently induced the cheese vendor to deliver the cheese to him, instead of to Rice, by falsely telling the vendor that Rice no longer desired the cheese. Noting that Rice was damaged to the extent that he had lost the benefit of his bargain, the Court of Appeals upheld his fraud cause of action against the defendant, even though it was the cheese vendor, rather than the plaintiff, who had detrimentally relied on the defendant's fraudulent misrepresentation. The Court of Appeals stated, "it matters not whether the false representations be made to the party injured or to a third party, whose conduct is thus influenced to produce the injury" (*Rice v Manley, supra* at 87).

In *Piper v Hoard* (107 NY 73 [1887]), the Court of Appeals held that the plaintiff was entitled to assert a cause of action based on fraud against the defendant, even though the plaintiff was not alive when the fraudulent representation was made. The defendant in the *Piper* case induced the plaintiff's mother to marry the plaintiff's father by falsely asserting that any issue of such marriage would later inherit certain property. The Court of Appeals held that the plaintiff, who, as the daughter of the parties whose marriage had been induced by the defendant's deceit, was the party who was most directly damaged as a result of the falsity of the defendant's assertions, had a valid cause of action sounding in fraud. The Court of Appeals stated, "[i]t is true the plaintiff was not born when the fraudulent representations were made. Still they were made by defendant to plaintiff's mother * * * and if they had been true the plaintiff would have been the owner of this particular property. In this way she is the very person injured by the fraud" (*id.* at 79).

The rule stated in the cases cited above is all the more forceful in a case involving prenatal injuries, that is to say, in a case involving injuries suffered by an entity whose well being is so intimately intertwined with the well being of the "third-person" to whom the fraudulent misrepresentation is made, that is, an expectant mother. Application of the rule stated above in such a case is also consistent with precedent from this Court holding that where the "third person" in question is an expectant mother, a tort committed against that "third person" may, under certain circumstances, give rise to a cause of action on behalf of the fetus who actually suffers the personal injuries. In *Hughson v St. Francis Hosp. of Port Jervis* (92 AD2d 131 [1983]), for example, this Court, expanding the rule that

permits a surviving child to have tort recovery based on prenatal injuries to the mother (see *Woods v Lancet,* 303 NY 349, [1951] overruling in part *Drobner v Peters,* 232 NY 220 [1921]; *cf. Becker v Schwartz,* 46 NY2d 401 [1978]), held that a surviving child similarly has a right to recover based on allegations that the defendant physician did not obtain the informed consent of the child's mother before her submission to the procedure during which the injury was inflicted.

This Court, in *Hughson v St. Francis Hosp. of Port Jervis (supra)*, rejected the argument that, because the mother of the infant plaintiff in that case had not asserted a cause of action based on lack of informed consent (see Public Health Law § 2805-d) on her own behalf, and was in fact time-barred from doing so, there could be no such cause of action asserted on behalf of the infant who actually suffered the prenatal injuries. The Court noted that it was the parent who normally gives "effective consent" on behalf of an infant (Public Health Law § 2504 [2]), and necessarily rejected any argument to the effect that, because a fetus cannot form any consent at all, no claim founded on prenatal injuries may be asserted based on the supposed lack of "informed consent by the fetus."

Consistent with *Hughson v St. Francis Hosp. of Port Jervis (supra)*, this Court has also recognized a cause of action on behalf of a plaintiff who alleged that he had suffered injuries as the result of his then-expectant mother's exposure to a toxic chemical (ethylene oxide) during the course of her employment with the defendant (see *Mann v Andersen Prods.,* 246 AD2d 68 [1998]). The plaintiff's essential claim was that the defendant had acted negligently "toward him in exposing his mother to the chemical while he was in utero." (*id.* at 70). The primary issue addressed by the Court was whether this claim was preempted by the terms of the Federal Insecticide, Fungicide, and Rodenticide Act (7 USC 136 *et seq.).* In resolving the preemption issue in favor of the plaintiff in that case, the Court necessarily decided that the plaintiff's claim was in fact cognizable in the State of New York.

The Ninth Circuit Court of Appeals held in *In re Gergely* (110 F3d 1448, 1453-1454 [1997]), that, in its view, California law would recognize a fraud cause of action asserted on behalf of an infant who lost one of his eyes while in utero as the result of his mother's fraudulently-induced consent to submit to an amniocentesis, and as a result of the physician's subsequent negligence in connection with the performance of that procedure. Quoting the decision of the Supreme Court of the State of California in a "wrongful life" case (*Turpin v Sortini,*

643 P2d 954 [1982]), the *Gergely* court stated, "[i]n the preconception or fetal stage, as in childhood, it is parents who nearly always make medical choices to protect their children's interests," and then added, "[T]his reasoning applies at least as well to fraud as to negligence" (*In re Gergely, supra* at 1453). The *Gergely* court's holding that a child may assert a fraud claim based on prenatal injuries caused by the defendant's willful deception of the child's mother is consistent with this Court's decision in *Hughson v St. Francis Hosp. of Port Jervis (supra)*, holding that a child may recover for prenatal injuries inflicted in consequence of the failure of the defendant to properly inform the child's mother of the consequences of the medical procedure during which the injuries were inflicted. It is also consistent with the holding in *Rice v Manley (supra)*, that the right to assert a cause of action in fraud is not always confined to the person who acted in reliance on the defendant's deception (*see also Blum v Merrell Dow Pharmaceuticals,* 33 Phila 193, 235-238, 1996 WL 1358523, 1996 Phila Cty Rptr Lexis 122 [Pa Ct of Common Pleas 1996]; *Armatas v Elmhurst Hosp. Ctr.,* 1999 WL 1495420, 1999 US Dist LEXIS 21308 [ED NY, Nov. 22, 1999]).

In sum, the weight of the limited amount of authority that is addressed at all to questions similar to those posed in this case supports the conclusion that a surviving child injured in utero as the result of a fraudulent statement relied upon by his or her mother does, in fact, possess a valid fraud cause of action. The supposed lack of merit of the fraud causes of action proposed to be added to the complaint on behalf of the infant plaintiff is thus not "free from doubt" (*USA Nutritionals v Pharmalife, Inc.,* 293 AD2d 526 [2002]), and, contrary to the argument of IBM, this proposed amendment of the complaint should therefore be permitted. Prudenti, P.J., Altman and Adams, JJ., concur.

Feuerstein, J., dissents in part and votes to affirm the order in its entirety, in the following memorandum with which Rivera, J., concurs. Because I believe that there is no cognizable cause of action in this state to recover damages for fraud, whether intentional, constructive, or negligent, perpetrated against an unborn child, I must respectfully dissent from that portion of the majority's decision which allows the infant plaintiff, Candace Curtis (hereinafter the infant plaintiff), to allege claims sounding in fraud which allegedly occurred before she was born.

The law is settled that while leave to amend should be freely granted (*see* CPLR 3025 [b]; *Ganci v Suffolk County Police*

*Dept.,* 285 AD2d 580 [2001]), a moving party must make some evidentiary showing that a proposed amendment has merit, as a palpably insufficient or meritless amendment will not be permitted (*see Curran v Auto Lab Serv. Ctr.,* 280 AD2d 636 [2001]; *Del Bourgo v 138 Sidelines Corp.,* 208 AD2d 795 [1994]). The proposed fraud claims require proof that a misrepresentation was made to the plaintiff and that the plaintiff reasonably relied upon such misrepresentation (*see Brown v Lockwood,* 76 AD2d 721 [1980]). Here, there was no misrepresentation made to the infant plaintiff, nor could she have relied on any representation made by IBM, because she was not born yet (*see Del Vecchio v Nassau County,* 118 AD2d 615 [1986]; *Ryan Ready Mixed Concrete Corp. v Coons,* 25 AD2d 530 [1966]; *see also Cement & Concrete Workers Dist. Council Welfare Fund, Pension Fund, Legal Servs. Fund & Annuity Fund v Lollo,* 148 F3d 194 [1998]; *Orlin v Torf,* 126 AD2d 252 [1987]). The majority's reliance upon *Hughson v St. Francis Hosp. of Port Jervis* (92 AD2d 131 [1983]), is misplaced because that case involves the statutorily created cause of action of lack of informed consent sounding in negligence, not fraud. *Hughson* stands for the proposition that a doctor has a duty to the unborn fetus, vicariously through the mother, to provide certain information about treatments that will directly impact the fetus. Accordingly, *Hughson* supports the infant plaintiff's negligence claims, not her fraud claims.

Therefore, I would affirm the Supreme Court's denial of leave to amend the complaint to add the fraud claims.