Hirsch v Memorial Sloan-Kettering Cancer Ctr. (2026 NY Slip Op 50120(U))

[*1]

Hirsch v Memorial Sloan-Kettering Cancer Ctr.

2026 NY Slip Op 50120(U)

Decided on February 4, 2026

Supreme Court, New York County

Kingo, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on February 4, 2026
Supreme Court, New York County

Barbara Hirsch, Plaintiff,

againstMemorial Sloan-Kettering Cancer Center, Defendant.

Index No. 155566/2021

Plaintiff's Counsel: Brian Seth Orlow, The Orlow FirmDefendant's Counsel: Daniel W. Ishoo & Stephaie B. Findling Gitnik, Kaufman Borgeest & Ryan LLP

Hasa A. Kingo, J.

The following e-filed documents, listed by NYSCEF document number (Motion 001) 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37 were read on this motion for SUMMARY JUDGMENT.
Defendant Memorial Sloan-Kettering Cancer Center ("defendant" or "MSK") moves pursuant to CPLR § 3212 for summary judgment dismissing the complaint, contending that the condition that allegedly caused plaintiff Barbara Hirsch's ("plaintiff") fall was open and obvious, not inherently dangerous, free of defect, and fully code compliant, and that plaintiff's own conduct was the sole proximate cause of the accident. Plaintiff opposes the motion, arguing that material issues of fact exist as to whether the condition constituted a dangerous condition, whether it created optical confusion, whether it was open and obvious under the circumstances, and whether defendant breached its duty to maintain the premises in a reasonably safe condition.BACKGROUND AND PROCEDURAL HISTORYThis is a premises liability action arising out of a trip-and-fall incident that occurred on July 7, 2020, at approximately 10:00 p.m., at defendant's facility located at 530 East 74th Street in Manhattan, commonly known as the David H. Koch Center for Cancer Care. Plaintiff alleges that she tripped and fell while traversing the passenger drop-off/vehicular driveway area near the main entrance due to a raised curb or curb-cut that was insufficiently demarcated, poorly [*2]contrasted from surrounding walking surfaces, and rendered difficult to perceive due to lighting conditions and surface uniformity.[FN1]

Plaintiff commenced this action on June 10, 2021. Defendant joined issue by serving a verified answer on September 30, 2021. Discovery proceeded, including plaintiff's deposition on December 6, 2022, and the deposition of defendant's witness, Suzan Heeley, MSK's Executive Director of Design and Construction, on September 14, 2023. The record reflects that the entranceway had undergone substantial renovation between approximately 2015 and 2020, including work to the sidewalk, curb, curb ramps, and vehicular drop-off area.[FN2]

Both parties retained experts who inspected the site in 2025. Plaintiff filed the note of issue on June 18, 2025, certifying that discovery was complete. Defendant thereafter timely moved for summary judgment. The motion is supported by deposition testimony, photographs, video footage of the incident, and an engineering expert affidavit. Plaintiff opposes with, inter alia, an expert architect's report, deposition testimony, and argument grounded in Appellate Division, First Department, precedent concerning optical confusion and contextual hazards.

ARGUMENTS
Defendant argues that it has established entitlement to judgment as a matter of law by demonstrating that the curb was code compliant, not defective, open and obvious, adequately illuminated, and not inherently dangerous. Defendant further contends that there is no applicable New York City code requiring color contrast or warning demarcation between the curb, driveway, and sidewalk, and that plaintiff's expert improperly relies on nonbinding guidelines. Defendant also asserts that plaintiff's decision to walk in the driveway rather than the pedestrian sidewalk, coupled with her failure to observe an obvious condition, was the sole proximate cause of the accident.
Plaintiff responds that summary judgment is inappropriate because the condition at issue cannot be evaluated in isolation, and that the totality of the circumstances—including the uniform coloration of the vehicular surface, curb, and sidewalk; the extension of a detectable warning mat beyond the flush area; the low vertical rise of the curb; the lighting conditions; and the foreseeable distraction of a person entering a hospital—created optical confusion and a trap for the unwary. Plaintiff contends that whether the condition was open and obvious, whether it was inherently dangerous, and whether defendant breached its duty of care are classic questions of fact for the jury.

DISCUSSION
A motion for summary judgment "shall be granted if, upon all the papers and proofs submitted, the cause of action or defense shall be established sufficiently to warrant the [c]ourt as a matter of law in directing judgment in favor of any party" (CPLR § 3212[b]). "The proponent of a motion for summary judgment must demonstrate that there are no material issues of fact in dispute, and that it is entitled to judgment as a matter of law" (Dallas-Stephenson v Waisman, 39 AD3d 303, 306 [1st Dept 2007]). The movant's burden is "heavy," and "on a motion for summary judgment, facts must be viewed in the light most favorable to the non-moving party" (William J. Jenack Estate Appraisers & Auctioneers, Inc. v Rabizadeh, 22 NY3d 470, 475 [2013][internal quotation marks and citation omitted]). Upon proffer of evidence establishing a prima facie case by the movant, the party opposing a motion for summary judgment bears the burden of producing evidentiary proof in admissible form sufficient to require a trial of material questions of fact (Zuckerman v City of New York, 49 NY2d 557, 562 [1980]). "A motion for summary judgment should not be granted where the facts are in dispute, where conflicting inferences may be drawn from the evidence, or where there are issues of credibility" (Ruiz v Griffin, 71 AD3d 1112, 1115 [2d Dept 2010][internal quotation marks and citation omitted]). 
To maintain a cause of action in negligence, "a plaintiff must demonstrate (1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom" (Pasternack v Lab's Corp. of Am. Holdings, 27 NY3d 817, 825 [2016]). "The question of whether a defendant owes a legally recognized duty of care to a plaintiff is the threshold question in any negligence action" (On v BKO Exp. LLC, 148 AD3d 50, 53 [1st Dept 2017]). "In the absence of a duty, as a matter of law, there can be no liability" (Pasternack, 27 NY3d at 825). 
In premises liability cases, that burden is particularly exacting where the claim turns on the appearance and perception of a condition rather than on a structural failure alone. Even where a condition is visible, the Appellate Division, First Department, has long recognized that visibility does not end the inquiry. Rather, the determination of whether a condition is open and obvious, and whether it is nonetheless dangerous, cannot be divorced from the surrounding circumstances and must be assessed in light of the totality of the particular facts presented in each case (Westbrook v WR Activities—Cabrera Mkts., 5 AD3d 69, 72 [1st Dept 2004]). Thus, an asserted hazard may be deemed actionable where its nature, location, or presentation makes it likely to be overlooked by a person making reasonable use of his or her senses, even if the condition is technically visible (id.; Tagle v Jakob, 97 NY2d 165, 169—170 [2001]). Whether a condition is open and obvious, whether it is inherently dangerous, and whether it constitutes a trap for the unwary are frequently fact-driven determinations reserved for the jury.
The Appellate Division, First Department, has repeatedly recognized that a change in elevation, such as a step or curb, may be dangerous where surrounding conditions create optical confusion, that is, the illusion of a flat, continuous walking surface that visually obscures the elevation change. As early as Brooks v Bergdorf-Goodman Co. (5 AD2d 162 [1st Dept 1958]), and reaffirmed in Schreiber v Philip & Morris Rest. Corp. (25 AD2d 262, 263 [1st Dept 1966], aff'd 19 NY2d 786 [1967]), courts have explained that findings of liability in such cases typically turn on factors including inadequate demarcation between raised and lowered areas, poor or misleading lighting, or other contextual distractions that render the elevation change deceptive [*3]rather than merely visible.
More recently, in Langer v 116 Lexington Ave., Inc. (92 AD3d 597, 599 [1st Dept 2012]), the Appellate Division, First Department, reiterated that while a visible step is often not inherently dangerous, a step may nonetheless be actionable where conditions create optical confusion, specifically the illusion of a flat surface that visually obscures the step. Taken together, these cases make clear that optical confusion is not a speculative doctrine but a recognized, fact-intensive inquiry focused on how a walking surface is reasonably perceived in its full context.
In support of a prima facie showing, defendant submits uncontroverted evidence demonstrating that the subject curb and entranceway were constructed as part of a completed renovation project that had been approved for occupancy prior to plaintiff's accident. Defendant's engineering expert opines, to a reasonable degree of engineering certainty, that the curb height and the adjacent ramp complied with all applicable standards, that no code or statutory violation existed, and that the area was reasonably safe for its intended use. Plaintiff does not identify any specific provision of the New York City Building Code, Administrative Code, or any statute that defendant allegedly violated. In addition, defendant submits contemporaneous video footage of the incident, as well as photographs depicting the condition of the area at issue.
Notwithstanding, the court finds that defendant has not eliminated all triable issues of fact.
First, the record contains evidence that the vehicular driveway surface, the curb/curb-cut, and the adjacent sidewalk were of similar coloration and material, and that a detectable warning mat—ordinarily used to signal a flush, accessible transition—extended beyond the fully flush area and into the area where a vertical rise existed. Plaintiff's expert opines that, from a pedestrian's approach angle, these cues could reasonably communicate that the walking surface ahead was continuously level and accessible, thereby creating a false impression of flushness rather than signaling an elevation change. Whether that presentation created the illusion of a flat surface is precisely the kind of optical-confusion question contemplated by Brooks, Schreiber, and Langer.
Second, the transitional geometry of the area is significant. This was not a conventional sidewalk curb at a street corner, but rather a curb cut and transition zone within a hospital drop off area, an environment in which pedestrians may reasonably expect accessible and flush passage. The Appellate Division, First Department, has cautioned that what is "ordinarily apparent" depends on where the condition is encountered and what a reasonable pedestrian would expect in that location (Westbrook, 5 AD3d at 72). A jury could reasonably conclude that, in this context, the design cues, including the uniformity of the walking surfaces and the placement of the warning mat, were misleading.
Third, there is a material dispute between the parties' experts that the court may not resolve on summary judgment. Defendant's expert measured the curb rise at approximately one and one eighth inches and opined that the condition was safe and compliant, while plaintiff's expert measured a rise of approximately one and one half inches and opined that the low profile, undemarcated edge, when considered together with the surrounding visual cues, created a foreseeable trip hazard. Beyond the differing measurements, the experts fundamentally disagree as to how a pedestrian would reasonably perceive the walking surface from the approach angle. Such competing expert interpretations concerning perception, visual cueing, and the communication of elevation changes in a walking surface present classic questions for the trier [*4]of fact.
Defendant relies heavily on video footage and photographs to argue that the curb was open and obvious and that lighting was plentiful. While the court has reviewed that evidence, it does not conclusively eliminate the issues raised by plaintiff. The video depicts the incident from a distance and at an elevated vantage point, and while the area appears to have overhead lighting, that does not establish, as a matter of law, that the lighting was adequate from plaintiff's precise approach angle, at ground level, to reveal the elevation change at the exact point where she fell. Nor does the video negate the combined optical-confusion factors of surface uniformity, warning-mat cues, and transitional geometry.
Objective evidence may defeat a plaintiff's claims where it conclusively demonstrates visibility and safety (see Tagle v Jakob, 97 NY2d 165, 169-170 [2001]; see also Jimenez v City of New York, 191 AD3d 603, 604 [1st Dept 2021]). Here, however, the video does not resolve how the walking surface would reasonably appear to a pedestrian approaching at night, nor does it eliminate the possibility that the elevation change was likely to be overlooked under the totality of the circumstances.
Additionally, the court agrees that plaintiff has not identified a binding New York City code provision requiring contrasting colors or specific demarcation at this location. However, code compliance does not end the negligence inquiry. A landowner's common-law duty to maintain reasonably safe premises may require additional precautions where a design predictably misleads pedestrians, even absent a specific regulatory mandate (Elliott v City of New York, 95 NY2d 730, 734 [2001]). The absence of a code violation is a factor for the jury to consider; it is not dispositive where there is evidence that the condition's presentation created a foreseeable risk of harm.
Finally, even assuming arguendo that the curb could be found open and obvious, that finding would not compel dismissal at this stage. Where a condition is arguably open and obvious but not conclusively non-dangerous as a matter of law, the issue generally goes to comparative fault, not to the existence of a duty or breach (Tagle, 97 NY2d at 170; CPLR § 1411). Defendant's arguments regarding plaintiff's path of travel and attentiveness are appropriately addressed by a jury in apportioning fault, rather than by dismissal on summary judgment.

 CONCLUSION
Viewing the record in the light most favorable to plaintiff, and mindful of the court's role on a motion for summary judgment, the court concludes that defendant has failed to demonstrate entitlement to judgment as a matter of law. As a threshold matter, defendant has not eliminated the existence of its duty, as a landowner owes a duty to maintain its premises in a reasonably safe condition under the circumstances (Basso v Miller, 40 NY2d 233, 241 [1976]). While there is no duty to warn of a condition that is both open and obvious and not inherently dangerous, a determination that a condition is open and obvious does not, standing alone, relieve a landowner of its continuing obligation to maintain the premises in a reasonably safe condition (Tagle, 97 NY2d at 170; Westbrook, 5 AD3d at 72).
Here, defendant has also failed to conclusively establish the absence of notice. The record reflects that the curb cut, walking surfaces, and warning mat were part of a permanent design and construction feature of the entranceway, rather than a transient condition. To the [*5]extent the condition itself is alleged to be dangerous by virtue of its design and presentation, notice may be inferred from defendant's ownership, control, and role in the construction and maintenance of the area. At minimum, whether defendant had actual or constructive notice of a condition that allegedly created optical confusion and a foreseeable tripping hazard presents a question of fact that cannot be resolved on this record as a matter of law.
Moreover, defendant's reliance on video evidence does not eliminate triable issues of fact. The video depicts the incident from a distance and from a vantage point that does not conclusively establish how the walking surface and elevation change would have appeared to a pedestrian approaching at night, at ground level, and from the specific angle at which plaintiff traversed the area. While the footage suggests the presence of overhead lighting, it does not resolve whether the lighting was adequate to reveal the elevation change at the precise location of the fall, nor does it negate the combined effect of surface uniformity, warning mat placement, and transitional curb cut geometry on pedestrian perception.
Considering the totality of the circumstances, including the warning mat cue, the uniformity of the surrounding walking surfaces, the nature of the transitional curb cut within a hospital drop off area, the competing expert opinions regarding perception and hazard, and the limitations of the video evidence, the court finds that defendant has not eliminated all triable issues of fact. Whether the condition created optical confusion, whether it was likely to be overlooked by a pedestrian making reasonable use of his or her senses, whether defendant breached its duty to maintain the premises in a reasonably safe condition, and the extent to which plaintiff's own conduct may bear on comparative fault are determinations that depend on credibility assessments and factual inferences properly reserved for the trier of fact.
Under these circumstances, where the issues cannot be resolved conclusively as a matter of law and turn on the particular facts and context presented, the matter is appropriately decided by a jury. Accordingly, defendant's motion for summary judgment is denied. It is therefore
ORDERED that defendant's motion for summary judgment pursuant to CPLR § 3212 is denied in its entirety; and it is further
ORDERED that the action shall proceed to trial on all remaining issues; and it is further
ORDERED that the parties are directed to appear for a settlement conference before the court in person on Wednesday, March 11, 2026, at 11:30 a.m., in Room 308 of the courthouse located at 80 Centre Street, New York, New York; and it is further
ORDERED that all counsel appearing for the settlement conference shall have full settlement authority, or shall be accompanied by a representative with full settlement authority; and it is further
ORDERED that all parties shall appear in person with their counsel at the settlement conference, unless otherwise directed by the court; or, in the alternative, shall be available by telephone for immediate consultation and communication regarding settlement during the conference.
This constitutes the decision and order of the court.
DATE 2/4/2026HASA A. KINGO, J.S.C.

Footnotes

Footnote 1:Plaintiff's bill of particulars defines the subject condition as: "the defective condition consisted of an area where the roadway met the curb such that the curb was gradually decreasing and difficult for a pedestrian such as plaintiff to observe [. . .] there was no warning or distinction provided in the area where the curb grew smaller to notify pedestrians of the hazard."

Footnote 2:According to Heely, who testified on behalf of MSK, the renovations were complete before July 2020 and prior to plaintiff's fall, Heely was unaware of any prior incidents with this particular segment of the curb.