## Bunn v Faxton-St. Luke's Healthcare

### 2022 NY Slip Op 34670(U)

### October 4, 2022

### Supreme Court, Oneida County

### Docket Number: Index No. EFCA2017-002702

### Judge: Bernadette T. Clark

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

At a term of Supreme Court of the State of
New York held in and for the County of
Oneida at the Oneida County Courthouse
200 Elizabeth Street, Utica, New York on
the 4th day of **October, 2022.**

PRESENT:    HONORABLE BERNADETTE T. CLARK
            Justice Presiding

STATE OF NEW YORK
SUPREME COURT      COUNTY OF ONEIDA

---

**GAYLE BUNN and PETER BUNN, SR.,**

                        Plaintiffs,

            -vs-

**FAXTON-ST. LUKE'S HEALTHCARE AND
FAIRBROTHER PROPERTY MAINTENANCE, LLC,**

                        Defendants.

---

**DECISION AND ORDER**

Index No. EFCA2017-002702
RJI No. 32-19-0525

APPEARANCES:

BRINDISI, MURAD & BRINDISI PEARLMAN, LLP
**Anthony A. Murad, Esq.**
*Attorneys for Plaintiffs, Gayle Bunn and Peter Bunn, Sr.*
2137 Genesee Street
Utica, New York  13501
(315) 733-2396

GALE, GALE & HUNT
**Kirsten Lerch Kroft, Esq.**
*Attorneys for Defendant, Faxton-St. Luke's Healthcare*
P.O. Box 6527
Syracuse, New York  13217-6527
(315) 637-3667

ROSSI & ROSSI
**Vincent J. Rossi, Jr., Esq.**
*Attorneys for Defendant, Fairbrother Property Maintenance, LLC*
587 Main Street, Suite 302
New York Mills, New York  13417
(315) 362-8966

1

[* 1]

*Clark, Bernadette T.*

Presently before the Court are three motions. The first of these motions, which was brought by defendant Faxton-St. Luke's Healthcare (hereinafter FSLH), seeks summary dismissal of the plaintiff's complaint on the ground that there was a storm in progress at the time of the plaintiff's accident. The second motion was brought by defendant Fairbrother Property Maintenance, LLC, (hereinafter Fairbrother). This motion, first of all, seeks summary dismissal of the plaintiff's direct claims against Fairbrother on two grounds, namely, that, as a third-party contractor, Fairbrother owed no duty to the plaintiff and, moreover, even if a duty existed, that duty, as asserted by FSLH in its own motion, was suspended by a storm in progress. Additionally, the motion by Fairbrother seeks summary dismissal of the cross-claims asserted against it by FSLH for contribution and indemnification. The third, and final, motion before the Court was brought by the plaintiff, and, by this motion, the plaintiff requests, pursuant to CPLR § 3126 and owing to Fairbrother's alleged spoliation of certain evidence, that this Court determine as a matter of law that Fairbrother created the dangerous condition that caused the plaintiff's fall and an order precluding Fairbrother from offering any evidence about the condition of the sidewalk upon which the plaintiff's accident occurred.

In support of its motion for summary judgment, FSLH submitted a notice of motion; a memorandum of law; a statement of material facts; an affidavit by Mr. Wayne Mahar, which referenced and was accompanied by his curriculum vitae, as well the weather data and a photograph upon which he relied; additional affidavits by Mr. Christopher Kilmartin and Nicholas Fairbrother; and, finally, an affirmation by Kirsten Lerch, Esq., which was accompanied by numerous exhibits, namely, (A) the summons and complaint in this matter, (B) FSLH's answer, (C) FSLH's demand for a bill of particulars and the plaintiff's response, (D) the

2

plaintiff's combined discovery demands and FLSH's response, (E) surveillance footage of the plaintiff's fall, (F) the plaintiff's supplemental summons and complaint, (G) FSLH's answer to the plaintiff's amended complaint, (H) the plaintiff's notice to produce as to Fairbrother and Fairbrother's response thereto, (I) the plaintiff's supplemental bill of particulars, (J) the plaintiff's third notice to produce and FSLH's response, (K) a report as to an incident involving Ms. Bonnie Steele-Johnson, (L) surveillance footage relative to that incident, (M) the deposition testimony of the plaintiff, (N) the deposition testimony of Mr. Peter Bunn, (O) the deposition testimony of Mr. Michael Fairbrother, (P) the deposition testimony of Mr. Nicholas Fairbrother, (Q) the deposition testimony of Mr. Allen Hurd, (R) the deposition testimony of Ms. Tracy Hilderbran, (S) the deposition testimony of Ms. Carly Insel, (T) the deposition testimony of Ms. Carolynn Lyman, (U) the deposition testimony of Ms. Kelli Thomas, (V) the deposition testimony of Mr. Christopher Kilmartin, (W) the deposition testimony of Mr. Kevin Leach, (X) the deposition testimony of Mr. David Siriano, (Y) the deposition testimony of Ms. Brandy Stack, (Z) the deposition testimony of Dr. Juleen Qandah, (AA) a sworn statement by Ms. Steele-Johnson, (BB) FSLH's amended answer to the plaintiff's amended complaint, and, finally, (CC) records of the Kunkel Ambulance Service. In addition to the above-mentioned items, this Court also considered several items submitted by FSLH that were offered in reply to the plaintiff's opposition to this motion, including an affirmation by Ms. Christine Sullivan, Esq., an additional memorandum of law, and a response to the plaintiff's counterstatement of material facts. Lastly, the Court considered papers submitted by FSLH in response to the motion brought by Fairbrother, which papers consisted of another affirmation by Ms. Sullivan, Esq., a response to Fairbrother's statement of facts, and yet another memorandum of law.

3

[* 3]

Fairbrother, in support of its motion, submitted a notice of motion; a memorandum of law; a statement of material facts; the same affidavit by Mr. Mahar that was submitted by FSLH in support of its own motion, including the exhibits upon which he relied; an affidavit by Mr. Nicholas Fairbrother; and, finally, an affidavit by Mr. Evan Rossi, Esq. The Court considered each of these items with regard to Fairbrother's motion, along with the several exhibits that were annexed to the latter affidavit, including (A) the plaintiff's initial summons and complaint, (B) FSLH's answer to that initial complaint, (C) the plaintiff's amended complaint, (D) FSLH's answer to that amended complaint with cross-claims against Fairbrother, (E) Fairbrother's answer to the plaintiff's amended complaint, (F) a document prepared by FSLH outlining the scope of snow plowing services to be provided by Fairbrother, (G) Fairbrother's demand for a bill of particulars, (H) the plaintiff's bill of particulars as to Fairbrother, (I) the plaintiff's second bill of particulars as to Fairbrother, (J) the plaintiff's third bill of particulars as to Fairbrother, (K) Fairbrother's amended answer, (L) the deposition testimony of the plaintiff, (M) the deposition testimony of Ms. Stack, (N) the deposition testimony of Ms. Thomas, (O) a log prepared by Mr. Nicholas Fairbrother with regard to salting operations performed on January 17, 2017, on the property of FSLH, (P) a photograph secured by Mr. Fairbrother in the aftermath of the plaintiff's fall depicting the area where the fall occurred, (Q) an incident report with regard to the plaintiff's fall, (R) records of the Kunkel Ambulance Service, (S) the deposition testimony of Ms. Insel, and, finally, (T) the deposition testimony of Mr. Siriano. This Court also considered several additional items submitted by Fairbrother, which were, at once, in reply to the plaintiff's oppositional papers and responsive to the separate motion filed by the plaintiff. These items included an additional memorandum of law; an affidavit by Mr. W. Curtis Nichols; an affidavit by Mr. Nicholas Fairbrother; and an additional affidavit by Mr. Rossi, which was accompanied

4

[* 4]

by Fairbrother's demand for a supplemental bill of particulars, an article authored by Mr. John Allin, photographs depicting a flood in Fairbrother's office space, documentation with regard to a flooding incident in the vicinity of Fairbrother's place of business, material safety data sheets for sodium chloride and calcium chloride, and, finally, a manual promulgated by the New York State Department of Transportation addressing snow and ice control.

The plaintiff, for her part, and as indicated, filed her own motion and, additionally, submitted papers responsive to the foregoing motions brought by FSLH and Fairbrother. As to the motion filed by FSLH, the plaintiff, in response, submitted a memorandum of law, a response to FSLH's statement of material facts, a counter statement of material facts, an affirmation by Anthony A. Murad, Esq., including a photograph depicting the entrance to FSLH's Regional Cancer Center, and finally, an affidavit by Mr. John A. Allin, which affidavit was accompanied by Mr. Allin's curriculum vitae and his investigative report, the findings of which were incorporated in his affidavit. With regard to her own motion, the plaintiff submitted papers that were supportive thereof and that were also, at the same time, responsive to the motion filed by Fairbrother. These papers consisted of a notice of motion; a memorandum of law; a response to Fairbrother's statement of material facts; a counter statement of material facts; an affidavit by the plaintiff herself; the same affidavit of Mr. Allin, along with exhibits, that was submitted in opposition to the motion brought by FSLH; and, also, another affirmation by Mr. Murad, Esq., which was accompanied by certain e-mails between staff at FSLH and the plaintiff's first supplemental verified bill of particulars as to Fairbrother. Finally, this Court considered yet another affirmation by Mr. Murad, Esq., which was submitted in reply to the papers filed by Fairbrother in opposition to the plaintiff's motion.

5

[* 5]

### *Background*

The plaintiff in this case alleges that, on January 17, 2017, at roughly 1:15pm, while on the property of FSLH, she slipped on ice, fell to the ground, and suffered an injury. At the time of this incident, there existed a contractual relationship between FSLH and Fairbrother such that the latter was responsible for providing snow plowing services to the former. By virtue of its agreement with FSLH, Fairbrother was responsible for plowing and salting the parking lots and sidewalks at FSLH and the entrances to its building. More particularly, the agreement required, in pertinent part, that plowing be done upon any accumulation of one and one-half inches or more of snow and, also, that salting be done upon one-half inch or more of accumulation or in the event of any freezing rain or ice storm. Additionally, the agreement required the use of calcium chloride for "salting" the sidewalks and entrances at FSLH and, moreover, required that Fairbrother leave a supply of calcium chloride for use by FSLH staff in an emergency.

As to procedural history, this case was commenced by the filing of a summons and complaint on December 19, 2017. Issue was joined by FSLH on January 31, 2018, whereafter, on January 3, 2019, the plaintiff filed an amended complaint adding Fairbrother as a defendant. On January 14, 2019, FSLH served an answer to the amended complaint, which answer asserted cross-claims against Fairbrother, and then, on March 6, 2019, Fairbrother served its own answer. Thereafter, Fairbrother moved for and was granted leave to serve an amended answer, which it subsequently did on July 8, 2021. Roughly a month later, on August 2, 2021, the plaintiff filed a Note of Issue and Certificate of Readiness for trial, but, then, this Court issued an order on September 14, 2021, which permitted FSLH to file its own amended answer and, so as to afford the plaintiff an opportunity to pursue additional discovery concerning any items raised in that amended answer, the note of issue was held in abeyance until September 10, 2022. Importantly,

6

[* 6]

the Court's order also extended the deadline for dispositive motions to December 30, 2021, and, accordingly, each of the pending motions is timely. Oral argument was held in person on June 30, 2022, and this Court reserved decision.

### *Analysis*

At the outset, it bears mentioning that "summary judgment is a drastic remedy and should not be granted where there is any doubt as to the existence of a triable issue" or "where the issue is arguable." *Rotuba Extruders, Inc. v. Ceppos*, 46 N.Y.2d 223 (1978) and *Sillman v. Twentieth Century-Fox Film Corp.*, 3 N.Y.2d 395 (1957). In deciding motions for summary judgment, courts are not at liberty to make credibility determinations or weigh evidence; "issue-finding, rather than issue-determination, is the key to the procedure." *Vega v. Restani Const. Corp*, 18 N.Y.3d 499 (2012), and see *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). Indeed, on a motion for summary judgment, the "facts must be viewed in the light most favorable to the non-moving party." *Vega Id.* citing *Ortiz v. Varsity Holdings*, LLC, 18 N.Y.3d 335 (2011). Procedurally, the party seeking summary judgment bears the initial burden of making a *prima facie* showing of entitlement to judgment as a matter of law by tendering sufficient evidence, in admissible form, to demonstrate the absence of any material issues of fact. *Alvarez v. Prospect Hosp.*, 68 N.Y.2d 320 (Ct. of Appeals, 1986) Then, only after such a showing has been made, the burden shifts to the opposing party to show, by admissible evidence, the existence of a factual question necessitating a trial. *Zuckerman v. City of New York*, 49 N.Y.2d 557 (Ct. of Appeals, 1980).

### ~~Motion for Summary Judgment by FSLH~~

Against this backdrop, the Court turns its attention first to the motion for summary judgment filed on behalf of FSLH. FSLH has moved for summary dismissal of the complaint in

7

this matter on the ground that there was a storm in progress at the time of the plaintiff's accident. It is well established that, "although a landowner owes a duty of care to keep his…property in a reasonably safe condition, he will not be held liable in negligence for a plaintiff's injuries sustained as the result of an icy condition occurring during an ongoing storm or for a reasonable time thereafter." *Gould v. 93 Nyrpt, LLC*, 191 A.D.3d 1452 (4th Dept., 2021); citing *Sherman v New York State Thruway Auth.*, 27 N.Y.3d 1019 (Ct. of Appeals, 2016). In the context of a motion for summary judgment, a "defendant seeking to avail itself of the storm in progress doctrine meets its *prima facie* burden by establishing as a matter of law that there was a storm in progress at the time of the accident" at issue and that the "plaintiff's injuries were caused by (that) storm in progress." *Govenettio v. Dolgencorp of New York, Inc.*, 175 A.D.3d 1805 (4th Dept., 2019) and *Stalker ex rel. Stalker v. Crestview Cadillac Corp.*, 284 A.D.2d 977 (4th Dept., 2001); see also *Alvarado v. Wegmans Food Mkts., Inc.*, 134 A.D.3d 1440 (4th Dept., 2015] and *Glover v. Botsford*, 109 A.D.3d 1182 (4th Dept. 2013).

FSLH endeavored to meet its burden in this regard by adducing and highlighting proof in the form of, *inter alia*, the deposition testimony of several witnesses, surveillance footage and a photograph depicting the area of the plaintiff's fall, as well as an affidavit by Mr. Mahar and the weather records upon which he relied in forming his opinion as to the prevailing weather conditions. This Court notes, first of all, that, to be sure, the surveillance footage and photograph adduced by FSLH offer clues that are indeed suggestive of a storm in progress during and around the time of the plaintiff's accident, but, critically, the image quality of these items is such that they do not definitively resolve the issue. With regard to the affidavit of Mr. Mahar and assorted weather data, including Doppler Radar Images, these items constitute admissible and competent evidence, which this Court credited, and they, too, tend to establish that there was a storm in

8

[* 8]

progress when the plaintiff fell. Moreover, the same can be said as to the deposition testimony of certain witnesses, most notably Mr. Nicholas Fairbrother, Ms. Stack, and Ms. Hilderbran, who attested to the foul weather at and around the time of the plaintiff's fall. Even so, the defendant also adduced the deposition testimony of the plaintiff and a sworn statement of Ms. Steele-Johnson. Very importantly, the plaintiff, in her testimony, attested that the inclement weather from earlier in the day had stopped by the time of her arrival at FSLH's property and that no further stormy weather occurred until after she fell at approximately 1:15 p.m. See Lerch Aff. at Ex. M, i.e., Bunn Tr. at pg. 16. Likewise, Ms. Steele-Johnson, swore in her statement that "it was not precipitating at the time (she) fell," which happened at around 12:45 p.m., and that she "does not recall it precipitating when she first arrived" at FLSH's property roughly one hour earlier. See Lerch Aff. at Ex. AA. From these latter items of evidence, it is plain to see that, instead of demonstrating the absence of any material issues of fact, the defendant has, in fact, raised an issue of fact as to whether there was truly a storm in progress when the plaintiff's accident occurred, and, for this reason, summary judgment is inappropriate and the Court need not consider the sufficiency of the plaintiff's oppositional papers.

Notwithstanding the above, this Court feels compelled to address a few points raised by the defendant that are well taken but, nevertheless, fail to establish an entitlement to judgment as a matter of law. First, to make the point that their memories of the events at issue were clouded by the passage of time, the defendant highlights that no less than three full years elapsed before the plaintiff was deposed and before Ms. Steele-Johnson's recollections were reduced to a sworn written statement. This fact might indeed impact the weight that a jury is willing to accord the testimony of these witnesses at trial, but, in the context of a motion for summary judgment, the Court is not empowered to weigh evidence or pass upon the credibility of witnesses. The

9

[* 9]

defendant also makes the legitimate point that "a landowner is not responsible for a failure to remove snow and ice *until a reasonable time has elapsed after cessation of (a) storm*," and, in the same vein, this Court further notes that "a temporary lull in (a) storm at the time of (an) accident (does) not *necessarily* establish a reasonable opportunity to clear away (a) hazard." *Camacho v. Garcia*, 273 A.D.2d 835 (4ᵗʰ Dept., 2000) (emphasis added) and *Ndiaye v NEP W. 119th St. LP*, 124 A.D.3d 427 (1ˢᵗ Dept., 2015) (emphasis added); and see, also, e.g., *Mann v. Wegmans Food Markets, Inc.*, 115 A.D.3d 1249 (4th Dept 2014) (emphasis added), wherein the plaintiff "failed to raise an issue of fact by submitting evidence that the precipitation had eased or ceased *at the time of her accident*." That said, it bears noting that, "if (a) storm has passed and precipitation has tailed off to such an extent that there is no longer any appreciable accumulation, then the rationale for continued delay abates, and common sense would dictate that the (storm-in-progress) rule not be applied, and, furthermore, that "(o)nce there is a *period of inactivity* after cessation of (a) storm, it becomes a question of fact as to whether the delay in commencing the cleanup was reasonable." *Patricola v. Gen. Motors Corp.*, 170 A.D.3d 1506 (4ᵗʰ Dept., 2019) and *Cappola v. Michael's Banquet Facility*, 8 A.D.3d 1100 (4ᵗʰ Dept., 2004) (emphasis added). Additionally, there is, of course, "no formula…for determining liability on the basis of the time lapse between the end of the storm and (an) accident." *Valentine v. City of New York*, 86 A.D.2d 381 (1ˢᵗ Dept., 1982). In the instant case, the sworn attestations of the plaintiff and Ms. Steele-Johnson suggest that not only was it no longer precipitating at the time of the plaintiff's fall but, indeed and very importantly, the precipitation had conceivably ceased nearly two hours earlier. Accordingly, this Court cannot rule as a matter of law, one way or the other, as to whether the storm in this case had ceased or abated for long enough that the defendant was afforded a

10

[* 10]

reasonable opportunity to ameliorate the icy conditions blamed for the plaintiff's accident, and so the defendant's motion for summary dismissal of the plaintiff's complaint must be denied.

### *Motion for Summary Judgment by Fairbrother*

This Court now turns to the second motion before it, which is a motion brought by Fairbrother. By this motion, Fairbrother seeks summary dismissal of the plaintiff's direct claims and, also, summary dismissal of the cross-claims asserted by FSLH for contribution and indemnification.

As to the plaintiff's direct claims, Fairbrother, like FSLH, seeks summary dismissal on the ground that any duty it owed to the plaintiff was suspended by a storm in progress, but, foremost, Fairbrother seeks summary dismissal on the ground that, as a third-party contractor, it owed no duty to the plaintiff in the first place. It is, of course, axiomatic that "(i)n the absence of a duty, as a matter of law, there can be no liability." *Pasternack v Lab. Corp. of Am. Holdings*, 27 N.Y.3d 817 (2016), citing *Solomon v City of New York*, 66 N.Y.2d 1026 (1985) and *Lauer v. City of New York*, 95 N.Y.2d 95 (2000); see also *Pulka v. Edelman*, 40 N.Y.2d 781 (1976), wherein the Court noted that "(i)n the absence of duty, there is no breach and without a breach there is no liability." In this vein, the Court of Appeals has made very clear that a "contractual obligation, standing alone, will generally not give rise to tort liability in favor of a third party." *Espinal v. Melville Snow Contractors, Inc.*, 98 N.Y.2d 136 (2002), citing *Eaves Brooks Costume Co., Inc. v. Y.B.H. Realty Corp.*, 76 N.Y.2d 220 (1990). Be that as it may, over time, the Court of Appeals has identified three exceptions to this general rule, "pursuant to which a party who enters into a contract to render services may be said to have assumed a duty of care—and thus be

11

[* 11]

potentially liable in tort—to third persons: (1) where the contracting party, in failing to exercise reasonable care in the performance of his duties, launche(s) a force or instrument of harm; (2) where the plaintiff detrimentally relies on the continued performance of the contracting party's duties and (3) where the contracting party has entirely displaced the other party's duty to maintain the premises safely." *Foster v. Herbert Slepoy Corp.*, 76 A.D.3d 210 (2nd Dept., 2010), citing *Espinal supra.* Also, notably, as to this first exception, the Court has clarified that launching a force or instrument of harm is substantively the same thing as creating or exacerbating a hazardous condition, which latter phrase is typically invoked by the Courts to describe a circumstance where a defendant's duty is not suspended by a storm in progress. *Espinal supra.*

A contractor moving for summary judgment against a third party, as here, bears the initial burden of, first of all, demonstrating that the plaintiff was not a party to the contract at issue and, moreover, but only if the plaintiff alleges facts in her complaint or bill of particulars that would tend to establish the applicability of any of the *Espinal* exceptions, the movant must also "affirmatively demonstrate" that no such exceptions apply. See, e.g., *Govenettio v Dolgencorp of New York, Inc.*, 175 A.D.3d 1805 (4th Dept., 2019) and *Foster v. Herbert Slepoy Corp.*, 76 A.D.3d 210 (2nd Dept., 2010). If the moving contractor makes the requisite *prima facie* showing, the burden then shifts to the plaintiff to come forward with admissible evidence sufficient to raise a triable issue of fact as to the applicability of one or more of the three *Espinal* exceptions. See *Foster supra.*

In this case, it bears noting, at the outset, that the plaintiff alleged facts in her third bill of particulars that established the possible applicability of all three *Espinal* exceptions. Still, Fairbrother sustained its initial burden by way of presenting several items of evidence, including,

12

[* 12]

among others, the affidavit of Mr. Nicholas Fairbrother, the plaintiff's deposition testimony, the deposition testimony of Ms. Stack, the deposition testimony of Mr. Siriano, the deposition testimony of Ms. Insel, the deposition testimony of Ms. Thomas, and finally the document prepared by FSLH outlining the terms and conditions concerning the plowing services to be provided by Fairbrother. First of all, through the deposition testimony of Ms. Thomas and the document detailing the terms and conditions of its contractual relationship with FSLH, Fairbrother established, *prima facie*, that the plaintiff was not a party to the snow and ice removal agreement; that agreement was between Fairbrother and FSLH exclusively. Additionally, Fairbrother established that it did nothing to create or otherwise exacerbate the icy conditions presumed to be responsible for the plaintiff's fall. In this regard, Fairbrother submitted the affidavit of Mr. Nicholas Fairbrother, who attested that his intervention on the date at issue was limited to merely "applying rock salt to the parking lots and sidewalks" of the FSLH campus. Likewise, through the plaintiff's deposition testimony, Fairbrother established that the plaintiff could not possibly have relied to her detriment on Fairbrother's performance of the snow and ice removal duties required by the agreement with FSLH because, by the plaintiff's own admission, she was not aware that such an agreement existed and, indeed, had "never heard" of Fairbrother before the date of her accident. See Rossi Aff. at Ex. B-1, i.e., Bunn Tr. at pg. 45. Finally, Fairbrother established that it did not completely displace FSLH's duty to maintain its premises in a safe condition. Fairbrother accomplished this by adducing the terms and conditions of its agreement with FSLH, which required Fairbrother to provide "calcium chloride for use by the office staff in an emergency," and also by proffering the deposition testimony of the several FSLH employees mentioned above, who readily acknowledged their practice of salting the entryways and sidewalks at FSLH as the need arose. See Rossi Aff. at Ex. A-6

13

[* 13]

(emphasis added) and, also, e.g., Stack Tr. at pgs. 9-12, Siriano Tr. at pg. 21, Insel Tr. at pgs. 14 and 20.

In light of the foregoing, the burden shifted to the plaintiff to raise a question of fact concerning the applicability of one or more *Espinal* exceptions, and, in this regard, the plaintiff focused on whether Fairbrother created or exacerbated the icy conditions at issue in this case and whether Fairbrother completely displaced FSLH's duty to maintain its premises safely. As to the latter, and instead of adducing any new evidence, the plaintiff, in an effort to show complete displacement by Fairbrother, simply highlighted that portion of the deposition testimony of Mr. Siriano wherein he acknowledged never having applied salt to the very specific location where the plaintiff's accident took place – that is, a landing at the bottom of a concrete stairway outside of the building entrance. See Siriano Tr. at pgs. 21-26. While this Court is willing to accept as true that neither Mr. Siriano nor any other employee of FSLH salted the landing on which the plaintiff fell, the balance of Mr. Siriano's testimony – not to mention the above-mentioned testimony of the other staff members – makes abundantly clear that employees of FSLH did, in fact, and when necessary, salt the entryway to the building and the stairway leading to the landing, and, for this reason, the plaintiff has failed to raise a question of fact sufficient to refute Fairbrother's *prima facie* showing that complete displacement is lacking in this case.

With regard to the other *Espinal* exception at issue, the plaintiff adduced and highlighted the report and affidavit of Mr. John Allin, who offered, in pertinent part, his opinion that Fairbrother's "failure to utilize the correctly specified deicing material (namely, calcium chloride) *created* the unsafe and dangerous condition and *exacerbated* the natural condition caused by the rainstorm resulting in the plaintiffs slip-and-fall accident and subsequent injuries." See Allin Aff. at para. 41. On this score, the Court first notes that an "expert should be

14

[* 14]

possessed of the requisite skill, training, education, knowledge or experience from it which it can be assumed that the information imparted or the opinion rendered is reliable," but, also, that "(p)ractical experience may properly substitute for academic training in determining whether an individual has acquired the training necessary to be qualified as an expert." *Matott v. Ward*, 48 N.Y.2d 455 (4th Dept., 1979). With this in mind, and assuming *arguendo* that Mr. Allin is indeed qualified to render the opinion specified above, it is nevertheless apparent to the Court that this opinion is conclusory and speculative, and expert opinions that are conclusive and speculative are insufficient to raise a triable issue of fact. See, e.g., *Aungst v Slippery Slats and All That, Inc.*, 6 A.D.3d 1078 (4th Dept., 2004). A careful reading of Mr. Allin's affidavit makes clear that his opinion is premised entirely on his assertion that, as a deicer, sodium chloride, or rock salt, as it is commonly called, which was the substance employed by Fairbrother in this case, is inferior to calcium chloride, which, pursuant to the agreement with FSLH, is the substance that Fairbrother was supposed to have used in the area of the plaintiff's fall. The Court accepts this assertion as true, but, regardless, Mr. Allin offers no apparent explanation as to how the use of an inferior deicer such as rock salt would somehow create ice that would not have otherwise existed or make existing ice more slippery and hazardous than it otherwise would have been. To be sure, and as explained by Mr. Allin, Fairbrother's use of a superior deicer like calcium chloride likely would have eliminated or removed more ice than the inferior alternative that was, in fact, used, but, quite simply, the mere "failure to remove all…ice or snow, without more, does not establish that (a) defendant increased the risk of harm" and such failure does not constitute the creation of a hazard or the exacerbation of one already existing. *Aronov v. St. Vincent's Hous. Dev. Fund Co., Inc.*, 145 A.D.3d 648 (2nd Dept., 2016); see also *Glover v. Botsford*, 109 A.D.3d 1182 (4th Dept., 2013) and *Foster supra*, the latter of which noted that any

15

"claim that a contractor exacerbated an existing condition requires some showing that the contractor left the premises in a more dangerous condition than he or she found them."[1]

Accordingly, inasmuch as the plaintiff has failed to raise a question of fact as to the applicability of any *Espinal* exception, this Court is compelled to grant the foregoing motion insofar as it seeks summary dismissal of the plaintiff's direct claims against Fairbrother.

Fairbrother, as already noted, also seeks summary dismissal of FSLH's cross-claims for contribution and indemnification. As to this branch of the motion, and in keeping with the above, Fairbrother has established its *prima facie* entitlement to judgment as a matter of law, and FSLH has failed to raise a triable issue of fact, with regard to the cross-claims for contribution and contractual indemnification. Since there is no evidence that Fairbrother owed a duty of reasonable care to the plaintiff or a duty of reasonable care independent of the obligations arising out of its contractual relationship with FSLH, FSLH's cross-claim for contribution must, indeed, be summarily dismissed. See, e.g., *Grove v. Cornell Univ.*, 151 A.D.3d 1813 (4th Dept., 2017). Moreover, since there is no evidence that Fairbrother ever agreed to indemnify FSLH, summary dismissal is also warranted as to the latter's cross-claim for contractual indemnification. See, e.g., *Zemotel v. Jeld-Wen*, Inc., 50 A.D.3d 1586 (4th Dept., 2008). With regard, though, to the cross-claim for common law indemnification, there are clear questions of fact and, for this reason, summary dismissal is inappropriate. In particular, and for example, the terms and

---

[1] The plaintiff, in her papers, cited to *Belmonte v. Guilderland Assoc., LLC*, to suggest that the use of untreated, as opposed to treated, rock salt is, on its own, enough to create or exacerbate a hazardous condition, but, in relying on this case, the plaintiff overlooked an important and distinguishing fact. *Belmonte v Guilderland Assoc., LLC*, 112 A.D.3d 1128 (3rd Dept., 2013). In the instant case, the defendant is alleged to have done nothing more than apply rock salt, an arguably inferior deicing agent, whereas in *Belmonte* the defendant not only used untreated rock salt **but also, very importantly**, shoveled snow from the sidewalk **onto** the parking lot area where the plaintiff fell, which then created "a layer of ice beneath the snow."

16

[* 16]

conditions of the snow and ice removal agreement in this case make clear that Fairbrother was required, without prompting or direction, to "salt" all "sidewalks and entrances" in the event of a "freezing rain or an ice storm" and was further required to use calcium chloride in those areas, which latter requirement Mr. Nicholas Fairbrother concededly disregarded by, instead, using an allegedly inferior deicing agent, namely, rock salt. And since there is legitimate dispute as to whether Fairbrother complied with the terms and conditions of its agreement with FSLH and thereby caused the plaintiff's accident, the cross-claim for common law indemnification remains viable.

In light of the foregoing, Fairbrother's motion must be granted insofar as it seeks summary dismissal of FSLH's cross-claims for contribution and contractual indemnification but must be denied as to the cross-claim for common law indemnification.

### *Motion by Plaintiff*

Finally, this Court turns its attention to the motion brought by the plaintiff, which, owing to the alleged spoliation of Fairbrother's logbook, seeks, among other things, a determination as a matter of law that Fairbrother created the dangerous condition at issue and that Fairbrother be precluded from offering any evidence as to the condition of the sidewalk on the occasion of the plaintiff's fall. With regard to this motion, the Court notes, as a starting point, that "a party (seeking) sanctions for spoliation of evidence must show that the party having control over the evidence possessed an obligation to preserve it at the time of its destruction, ***that the evidence was destroyed with a 'culpable state of mind***,' and that the destroyed evidence was relevant to the party's claim or defense such that the trier of fact could find that the evidence would support that claim or defense." *Pegasus Aviation I, Inc. v Varig Logistica S.A.*, 26 N.Y.3d 543 (2015).

In the instant matter, the plaintiff has failed to establish that Fairbrother's logbook was destroyed

17

[* 17]

with a ***culpable state of mind***.  To be sure, and as highlighted by the plaintiff, that phrase contemplates more than outright willful or intentional conduct; it also contemplates conduct that is negligent.  *Id.*  Even so, the plaintiff has failed to establish that Fairbrother's loss of the logbook at issue was negligent, let alone willful.  Fairbrother contends, and the plaintiff has not disputed, that its logbook, which theretofore had been stored at its shop, was lost in an unforeseen natural disaster – that is, a flood event which resulted in the declaration of a county-wide state of emergency.  In support of this contention, Fairbrother adduced photographs depicting the seemingly catastrophic flood damage caused to its shop, a news article corroborating the County Executive's declaration of a state of emergency, and, lastly, a notice from the New York State Governor concerning the provision of emergency services to victims of the flooding.  The plaintiff, for her part, has offered no countervailing proof on this issue.  Accordingly, inasmuch as the logbook was lost in a flood and was not intentionally or negligently destroyed, no sanction is warranted and the plaintiff's motion in this regard must be denied.  See Iamiceli v. Gen. Motors Corp., 51 A.D.3d 635 (2nd Dept., 2008); see also *Cohen v. 118 E. 60th Owners Inc.*, 64 Misc. 3d 1230(A) (Sup. Ct., New York County, 2019); *Wardlaw v 1221 Ave. Holdings, L.L.C.*, 2009 WL 10291401 (Sup. Ct., New York County, 2009); and *274 Madison Co. LLC v Ramsundar*, 2016 WL 1270668 2016 (Sup. Ct., New York County, 2009), which address the issue of spoliation in the context of evidence lost to a flood.

The Court has reviewed and considered the remaining arguments and contentions of the parties and finds them to be without merit.

Now, therefore, in accordance with the above, it is hereby

**ORDERED** that the motion for summary judgment brought by FSLH is **DENIED**, and it is further

18

**ORDERED** that the motion for summary judgment brought by Fairbrother is **GRANTED** insofar as it sought summary dismissal of the plaintiff's direct claims and insofar as it sought summary dismissal of FSLH's cross-claims for contribution and contractual indemnification but is **DENIED** insofar as it sought summary dismissal of FSLH's cross-claim for common law indemnification; and, finally, it is

**ORDERED** that the motion brought by the plaintiff is **DENIED** in its entirety.

**This shall constitute the Decision and Order.** The original Decision and Order is returned to the attorney for the Plaintiff. All other papers are being delivered by the Court to the County Clerk for filing. The signing of this Decision and Order does not constitute entry or filing under CPLR Rule 2220. Counsel is not relieved from the applicable provisions of that rule respecting filing, entry and notice of entry.

ENTER:

Dated: October 4, 2022
      Utica, New York

Hon. Bernadette T. Clark, J.S.C.