[45 NYS3d 68]

Aracelis On et al., Appellants, v BKO Express LLC et al., Respondents.

First Department, January 17, 2017

## APPEARANCES OF COUNSEL

*Meagher & Meagher, P.C.*, White Plains (*Keith Clarke* of counsel), for appellants.

*Dwyer & Taglia*, New York City (*Gary J. Dwyer* of counsel), for respondents.

### OPINION OF THE COURT

SAXE, J.

This appeal requires us to consider, once again, a seminal issue that has been central to our study of tort law since *Palsgraf v Long Is. R.R. Co.* (248 NY 339 [1928])—how the foreseeability of harm interconnects with the imposition of a duty in tort. The facts are as follows:

On a late, rainy summer night in 2009, defendant Mohamed Laaribi, a livery cab driver for defendant BKO Express LLC, picked up two fares from a street hail after he had stopped for a red light. The passengers asked Laaribi to take them to a Hunts Point address in the Bronx, and gave him some payment in advance to induce him to provide transportation. He agreed to take them.

The cab, a 2003 Lincoln sedan, had an inoperative CB radio and did not have a partition between the front and back seats; the emergency lights, installed to be used to alert police and passersby if help was necessary, were working.

When they arrived at the destination, one of the passengers asked Laaribi to go a bit farther. Although this request made him suspect that they were planning to rob him, he drove them to the next block, where it was dark, and stopped the car. One of the passengers then said, "Give me my money back" and "Give me your f—ing money too," and put something to the back of Laaribi's head that Laaribi thought might be a gun or other weapon. Laaribi gave him money, but the passenger demanded more. The second passenger never said anything, but he looked strong, and Laaribi was afraid he was going to hit him. When the second passenger began to get out, Laaribi accelerated the car a bit, thinking to get away from him, but the first passenger stayed in the car and hit him, saying, "Stop your f—ing car." The passenger again demanded more money, and when Laaribi again told him he had given him all the money, the passenger hit him again, harder than the first time. At that point, Laaribi said, he was rendered unconscious, after which his car proceeded forward, causing the collision that ultimately injured plaintiff Aracelis On. At some point during the incident, Laaribi activated his emergency light, but he explained that he never tried to call the base because everything happened in a short time and because the passengers had instructed him not to move or do anything.

Aracelis On brought this negligence action against Laaribi and BKO Express for her personal injuries; her husband Joe On sues for loss of consortium.

The motion court correctly granted defendants' motion for summary judgment dismissing the complaint.

■ Initially, there is no issue of fact regarding Laaribi's loss of consciousness from the attack, or the assertion that the collision occurred while he was unconscious. Laaribi's assertions are supported by medical evidence of a head injury, and nothing in the records contradicts or undermines Laaribi's assertions. In the absence of any showing contrary to Laaribi's position that he was unconscious at the time of the collision with plaintiffs' car, the emergency doctrine precludes plaintiffs' negligence claim against Laaribi, as well as any claim against cab owner BKO Express based on a theory of vicarious liability. Laaribi's loss of consciousness due to the attack on him qualified as "a sudden and unforeseen emergency not of the actor's own making" (*Rivera v New York City Tr. Auth.*, 54 AD3d 545, 549 [1st Dept 2008], quoting *Caristo v Sanzone*, 96 NY2d 172, 175 [2001]).

The issue requiring greater attention is whether plaintiffs may proceed with their direct claim against BKO Express on the theory that as the livery cab's owner, it violated a duty it owed to plaintiffs, by failing to install a partition or maintain a working CB radio in the cab. The motion court concluded that the failure to install a partition, as then required by the Rules of the City of New York, could not form the basis of a finding of negligence against BKO Express because plaintiffs were not within the class of individuals protected by that rule.

■ We conclude that plaintiffs' claim against BKO Express cannot prevail because, as the motion court correctly held, the owner of the livery cab does not owe a duty to the general public to install a partition in its cab. Any legal duty to install a partition, assuming any such duty is owed, is owed to the driver alone.

It is a fundamental principle of tort law that a plaintiff in a negligence claim "must demonstrate (1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom" (*Pasternack v Laboratory Corp. of Am. Holdings*, 27 NY3d 817, 825 [2016] [internal quotation marks omitted]). The question of whether a defendant owes a legally recognized duty of care to a plaintiff is the "threshold question in any negligence action" (*Hamilton v*

*Beretta U.S.A. Corp.*, 96 NY2d 222, 232 [2001]), and it is a legal question for the court (*Purdy v Public Adm'r of County of Westchester*, 72 NY2d 1, 8 [1988]). "In the absence of a duty, as a matter of law, there can be no liability" (*Pasternack*, 27 NY3d at 825). That is, if a defendant owes no duty to a plaintiff, "there can be no liability in damages, *however careless the conduct or foreseeable the harm*" (*Lauer v City of New York*, 95 NY2d 95, 100 [2000]).

At the time of the accident, the applicable rule relating to the installation of partitions in taxicabs (*see* 35 RCNY former 1-17 [now 59A-32]) did not impose a statutory duty on the part of BKO Express (the owner of the vehicle) toward plaintiffs, since that rule did not impose a duty on a cab owner toward the general public. In fact, the rule did not even impose an absolute requirement that a partition be installed in all cabs in all circumstances. For instance, it allowed for alternative safety devices, such as special lights and emergency radios and telephones, rather than a partition, as long as "the taxicab [was] driven by the medallion owner or corporate sharehold-ers" (*see* 35 RCNY former 1-17 [b] [1]). The rule clearly intended to impose an obligation to install a partition *only* where the driver was *not* the medallion owner (*see* 35 RCNY former 1-17 [b] [1], [5]).

Since alternative safety devices would not physically prevent a sudden attack on a driver by a passenger the way a partition would, the rule allowing alternative devices instead of a parti-tion to be installed when the owner-driver was the only driver of a cab clearly was not intended to protect against all attacks on drivers by passengers. The only protection it intended to provide was to ensure that *non-owner drivers* be protected with a partition. If the rule had been intended to protect not only the drivers, but the public at large from injury that could fol-low from attacks on drivers, then it would have required parti-tions in all taxicabs, regardless of who was driving. Therefore, the rule cannot form the basis for imposing a direct duty owed by BKO Express to plaintiffs.

Nor may a common-law duty to plaintiffs properly be imposed on BKO Express.

The question of whether the court should impose on a de-fendant a common-law duty to a plaintiff involves consideration of "morality, logic and . . . the social consequences of imposing the duty" (*Tenuto v Lederle Labs., Div. of Am. Cyanamid Co.*, 90 NY2d 606, 612 [1997]). The inquiry may involve "the reason-

able expectations of parties and society generally, the proliferation of claims, the likelihood of unlimited or insurer-like liability, disproportionate risk and reparation allocation, and public policies affecting the expansion or limitation of new channels of liability" (*532 Madison Ave. Gourmet Foods v Finlandia Ctr.*, 96 NY2d 280, 288 [2001] [internal quotation marks omitted]).

Plaintiffs focus on the foreseeability of the type of accident that occurred in the absence of safety devices that would have protected the driver from assault. They argue that since those safety devices would protect not only the driver, but other motorists and pedestrians who might be injured by the driver, the owner of the vehicle owed a duty to both the driver and to plaintiffs to install safety equipment that would protect them.

With regard to how foreseeability interconnects with duty, some confusion has arisen from the classic language of Chief Judge Cardozo's decision in *Palsgraf v Long Is. R.R. Co.* (248 NY 339, 344 [1928]), that "[t]he risk reasonably to be perceived defines the duty to be obeyed." These words have sometimes been misinterpreted to mean that the foreseeability of harm can "spawn[ ] a duty" to prevent that harm (*see e.g. Pulka v Edelman*, 40 NY2d 781, 787 [1976, dissenting opinion]). However, the majority in *Pulka v Edelman* clarified the error of this reasoning, to explain that foreseeability may not be relied on to create a duty:

> "Foreseeability should not be confused with duty. The principle expressed in *Palsgraf v Long Is. R.R. Co.* (248 NY 339, supra), quoted by the dissent, is applicable to determine the scope of duty—only after it has been determined that there is a duty. Since there is no duty here, that principle is inapplicable" (*Pulka*, 40 NY2d at 785).

In *Pulka v Edelman*, the Court therefore concluded that the foreseeability of the type of accident that occurred was irrelevant; a parking garage owed no duty to a pedestrian on the sidewalk outside the garage who was struck by a car leaving the garage, driven by the car's owner (*id.*).

In contrast, where the defendant owes some duty of care, and the question is the breadth of that duty, foreseeability of the injury to the plaintiff has been viewed as relevant to the discussion (*see Palka v Servicemaster Mgt. Servs. Corp.*, 83 NY2d 579, 586 [1994]). However, courts focus carefully on how far a duty should be extended, and for what type of harm.

For example, a maintenance company that had a contractual duty toward a hospital had its duty extended so as to cover a hospital employee injured by a falling wall-mounted fan, because, the Court said, the employee had a reasonable expectation that the defendant would use ordinary care and skill to avoid the injury that occurred (*see id.*).

Further elaboration of the limited ways an existing duty may be extended is provided in cases addressing whether to impose a duty on a physician beyond that owed directly to the patient. The Court of Appeals has permitted the imposition of a duty to the members of an infant patient's immediate family or household who may suffer harm as a result of the medical care a physician renders to the patient (*see Tenuto v Lederle Labs., Div. of Am. Cyanamid Co.*, 90 NY2d 606, 612 [1997], *supra*), and has remarked that a physician may "owe[ ] a duty of care to his patient and to persons he knew or reasonably should have known were relying on him for this service to his patient" (*see Eiseman v State of New York*, 70 NY2d 175, 188 [1987]). The Court has gone as far as to hold that "where a medical provider has administered to a patient medication that impairs or could impair the patient's ability to safely operate an automobile, the medical provider has a duty to [unknown] third parties to warn the patient of that danger" (*Davis v South Nassau Communities Hosp.*, 26 NY3d 563, 570 [2015]). However, generally, the courts of this state have declined to extend a broad duty of care to the "indeterminate, faceless, and ultimately prohibitively large class of plaintiffs" consisting of the community at large, as opposed to "a known and identifiable group" (*Davis*, 26 NY3d at 573, quoting *Palka*, 83 NY2d at 589, and citing *McNulty v City of New York*, 100 NY2d 227, 232 [2003], and *Eiseman v State of New York*, 70 NY2d at 187).

The limitations of extending an existing duty are also discussed in *532 Madison Ave. Gourmet Foods v Finlandia Ctr.* (96 NY2d 280 [2001], *supra*). The Court there explained that while "[a] landowner who engages in activities that may cause injury to persons on adjoining premises surely owes those persons a duty to take reasonable precautions to avoid injuring them[,] . . . a landowner [does not] owe[ ] a duty to protect an entire urban neighborhood against purely economic losses" (*id.* at 290). It particularly pointed out that a landowner's duty extends to tenants, patrons and invitees on the property, "because the special relationship puts them in the best position to protect against the risk," but "does not extend to members of the general public" (*id.* at 289).

.

■ "[C]ourts must be mindful of the precedential, and consequential, future effects of their rulings, and 'limit the legal consequences of wrongs to a controllable degree'" (*Lauer v City of New York*, 95 NY2d 95, 100 [2000], *supra*, quoting *Tobin v Grossman*, 24 NY2d 609, 619 [1969]). Turning to the situation before us, while the owner of a livery cab has a relationship to the driver of its cab, and therefore some duty to the driver, there is no "special relationship" between the owner of a livery cab and the members of the general public who may end up in a collision with the owner's vehicle. Even assuming, without deciding, that BKO Express was under a statutory duty toward its driver to install a safety device that would prevent attacks by passengers, an extension of any such duty to plaintiffs would improperly create an unwieldy duty toward essentially every member of the general public with whom the cab might come into contact in the event the driver was knocked unconscious by a criminal in the passenger seat, amounting to an "indeterminate, faceless, and ultimately prohibitively large class of plaintiffs" with whom the car company had no special relationship (*see Davis*, 26 NY3d at 573), improperly "exposing defendants to unlimited liability to an indeterminate class of persons" (*see 532 Madison*, 96 NY2d at 289).

Nor does the broken CB radio provide plaintiffs with a viable basis for a claim of negligence; there is even less reason to impose on defendants a duty to maintain a functioning radio for the benefit of the general public where there is no evidentiary basis for arguing that it would have assisted in preventing the attack.

In the absence of any duty on the part of BKO Express toward plaintiffs, there can be no liability. Therefore, it is not relevant whether the causal chain between defendants' negligence and plaintiff's injury was broken by the passenger's criminal act. The dismissal of the complaint against BKO as well as against Laaribi is required.

Accordingly, the order of the Supreme Court, Bronx County (Alison Y. Tuitt, J.), entered March 20, 2015, which granted defendants' motion for summary judgment dismissing the complaint, should be affirmed, without costs.

Acosta, J.P., Mazzarelli, Moskowitz and Gesmer, JJ., concur.

Order Supreme Court, Bronx County, entered March 20, 2015, affirmed, without costs.